UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ALAN ALEXANDER,

  Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

  Defendant.

Case No. 5:14-cv-00039

**OPINION AND ORDER**
**(Docs. 10, 13)**

Plaintiff Alan Alexander brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI"). Pending before the court are Alexander's motion to reverse the Commissioner's decision (Doc. 10) and the Commissioner's motion to affirm the same (Doc. 13). For the reasons stated below, the court GRANTS Alexander's motion, DENIES the Commissioner's motion, and REMANDS for further proceedings and a new decision.

## I.  Background

Alan Alexander was forty-seven years old on his alleged disability onset date of August 29, 2011. Alexander was diagnosed with attention deficit hyperactivity disorder (ADHD) as a child. (AR 351.) He never completed high school, but he obtained a GED in 1982. (AR 44, 46, 296, 366.) Since age 17, Alexander has spent approximately twenty years of his life in jails and prisons for various drug-related offenses and burglaries. (AR 44, 297, 366, 678.) He currently lives in an apartment with his girlfriend. (AR 273, 307.) Alexander has been married and divorced, and has no children. (AR 366.) Although he has worked in the past as a carpenter, painter, and at various prison jobs, he has no past relevant work experience for purposes of his disability determination because he held his last substantial gainful employment in 1987. (AR 30, 281, 367.) *See* 20 C.F.R. § 416.965(a) ("We consider that your work experience applies

when it was done in the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity.").

Alexander has various cognitive and physical conditions. In addition to ADHD, he suffers from anxiety and depression. (AR 1189.) He has also been diagnosed with cannabis and alcohol dependence. (AR 371.) While he reports that he last used alcohol in 2006, Alexander uses cannabis daily. (AR 372.) He also smokes a pack of cigarettes per day. (*Id.*) He regularly takes Ritalin and Seroquel to treat his cognitive disorders, and he underwent outpatient substance use treatment from February 2004 through February 2005. (AR 783-800, 1190.)

In addition to his cognitive disorders, Alexander has been diagnosed with osteoarthritis and rotator cuff disorder. (AR 1189.) A longstanding history of right shoulder pain led to an arthroscopic subacromial decompression and distal clavicle resection procedure in 2011. (AR 399.) He also underwent a partial medial meniscectomy in 2011 after a MRI revealed a medial meniscus tear in his left knee. (AR 411.) He regularly takes aspirin and ibuprofen to help alleviate his pain. (AR 1189.)

In January 2013 Alexander slipped and fell, injuring his right elbow. (AR 958.) A March 2013 MRI revealed a non-displaced fracture and a tear of the radial collateral ligament. (AR 952, 968.) Alexander wore a removable elbow splint to treat his injury. (AR 970-71.) He was prescribed oxycodone and Vicodin to treat his pain symptoms. (AR 968, 971.)

On the typical day, Alexander goes for short walks, stretches, cleans his apartment, cares for his cats, sits, reads, and does puzzles. (AR 308.) His girlfriend also helps care for the cats and their apartment. (*Id.*) He alleged difficulties in personal care activities such as dressing, bathing, and using the toilet. (*Id.*) He states that he does not prepare his own meals because he cannot lift pots and pans without dropping them. (AR 309.) He performs some house and yard work, but stated that he finds physical labor painful and depressing. (AR 310.) He does not drive, and goes shopping once or twice per month with his girlfriend. (*Id.*)

On August 29, 2011 Alexander applied for Social Security disability benefits under Title II of the Social Security Act as well as SSI under Title XVI of the act, alleging a disability onset date of December 31, 1994. (AR 20.) He later amended his alleged onset date to the date he filed his application. (AR 42.) Because he was not eligible as an insured for disability benefits

2

on his amended onset date, he currently only seeks SSI under Title XVI of the Social Security Act.

Alexander stated that his illnesses caused him concentration problems as well as the inability to lift weight with his right arm, due to his shoulder and elbow injuries, and to stand for long periods of time, due to his left knee injury. (AR 307.) He also stated that he got "seriously depressed and listless" and that he could not handle large crowds or high-pressure situations. (*Id.*) Alexander's August 29, 2011 application for SSI benefits was denied initially and upon reconsideration, and he timely requested an administrative hearing. (AR 129, 143, 160.) The hearing was conducted on May 20, 2013 by Administrative Law Judge ("ALJ") Thomas Merrill. (AR 41.) Alexander appeared and testified, and was represented by an attorney. (*Id.*) Alexander testified that he experiences debilitating pain as a result of his shoulder, knee, and elbow conditions. He testified that his shoulder "still pops and grinds a little bit," and that combined with his right elbow injury, he can lift very little with his right arm. (AR 57-58.) He further testified that he has trouble gripping with his hand, and that he was told that he "probably will never have full use" of his right arm again. (AR 58.) He also testified that after his knee surgery he still walks with a limp, that his knee bothers him daily, and that he may need a left knee replacement. (AR 59.) A vocational expert ("VE") also testified at the hearing. (AR 66-71.)

The ALJ found that Alexander had not been disabled from his alleged onset date through July 9, 2013, the date of his decision. (AR 32.) The Appeals Council denied Alexander's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 5.) Alexander appealed to this court on February 19, 2014. (Doc. 1.)

## II.   The ALJ's Decision

"Disability" under the Social Security Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In evaluating disability claims the Commissioner uses a five-step procedure. *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004). At step one the ALJ must determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, step two requires the ALJ to determine whether he has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, at step three he determines whether the severe impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumptively disabled. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984.)

If the claimant is not presumptively disabled, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is the most the claimant can do in a work setting despite his limitations based on the relevant evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the ALJ considers whether the claimant's RFC precludes the performance of his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). At the fifth and final step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proof in the first four steps; at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

Employing the five-step procedure, the ALJ first determined that Alexander had not engaged in any substantial gainful activity since his alleged disability onset date of August 29, 2011. (AR 22.) At step two, the ALJ found that Alexander had the following severe impairments: "osteoarthritis of the right upper extremity; depression; attention deficit hyperactivity disorder (ADHD); and substance addiction disorder." (*Id.*) At step three, the ALJ found that Alexander did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Listings. (AR 23.)

The ALJ then found that:

> [Alexander] has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) allowing for lifting 10 pounds frequently and 20 pounds occasionally; sitting, standing, and walking about six hours in an eight-hour workday; and occasional reaching with the right upper extremity. Due to [Alexander's] ADHD and impact on concentration, [he] is restricted to tasks requiring concentration in two-hour blocks of time.

(AR 25.) The ALJ found that Alexander was unable to perform any of his past relevant work, because he had none. (AR 30.) The ALJ then concluded based on Alexander's RFC and on the VE's testimony that there are other jobs in significant numbers in the national economy that Alexander could perform, such as "furniture rental consul," counter clerk, school bus monitor, and semiconductor bonder. (AR 31.) Finally, the ALJ concluded that Alexander had not been under a disability from the alleged onset date of August 29, 2011 through the date of his decision. (AR 32.)

### III.  Standard of Review

This court reviews "the administrative record *de novo* to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Where there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). The court should keep in mind "the fact that the Social Security Act is a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

### IV.  Analysis and Conclusions

Alexander argues that the ALJ improperly concluded at step two that his elbow injury was not a severe impairment. (Doc. 10 at 3.) He contends that in so concluding the ALJ erred by improperly analyzing medical data without an expert medical opinion; failing to fulfill his duty to adequately develop the record regarding the elbow injury; and concluding that the elbow

injury would not last the requisite twelve months. (*Id.* at 3-5.) Alexander also argues that the ALJ erred in giving little weight to a treating physician's opinion and in ignoring another opinion from the same physician. (*Id.* at 6.) The court addresses the latter argument first.

### A. The Opinions of Treating Physician Dr. Schwartz

Alexander argues that the ALJ erred in giving little weight to the May 1, 2012 opinion of treating physician Dr. Schwartz. (Doc. 10 at 6, Doc. 14 at 3; AR 30, 909.) He also argues that the ALJ erred in ignoring Dr. Schwartz's April 30, 2013 opinion. (AR 1198.) The court concludes that the ALJ erred in his consideration of these treating physician opinions, and that this error requires remand.

The opinion of a treating physician is normally entitled to "controlling or at least greater weight." *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000). Controlling weight is accorded if "a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). If the ALJ does not afford a treating physician's opinion controlling weight, he must explain why, taking into account the factors listed at 20 C.F.R. § 404.1527(c), including

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must give "good reasons" for the weight he gives to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

Dr. Schwartz's opinions are conveyed through two one-page application forms for General Assistance from the State of Vermont. (AR 909, 1198.) The first form is dated May 1, 2012 and the second form is dated April 30, 2013. (*Id.*) Each form contains a list of diagnoses, including "A.D.H.D," "bi-polar," and "anxiety." (*Id.*) The only difference of consequence in the later opinion is the addition of "broken right elbow" and "ligament . . . damage" to the list of Alexander's diagnoses. In response to the question, "How long do you expect this illness, injury or condition to last?" the box for "1 year" is checked. (*Id.*) The ALJ afforded the first opinion

little weight. (AR 30.) He failed to mention the later opinion in his decision, effectively affording it little or no weight. (*Id.*)

The ALJ failed to expressly consider any of the regulatory factors in his decision to afford the opinions little or no weight. An ALJ's failure to consider the relevant regulatory factors in weighing a treating physician's opinion is ordinarily grounds for remand. *Halloran*, 362 F.3d at 33. Remand is not necessary where "the ALJ applied the substance of the treating physician rule." *Id.* at 32.

The most significant factor in determining whether the ALJ applied the substance of the treating physician rule appears to be evidence in the ALJ's decision that he sufficiently considered a treating physician's opinion and rejected it for appropriate reasons. Confidence that an ALJ did so assures the court that a claimant benefited from the regulatory procedure even when this is not entirely evident on the surface of the ALJ's decision. *See* 20 C.F.R. § 404.1527(b) ("In determining whether you are disabled, we will *always consider* the medical opinions in your case record together with the rest of the relevant evidence we receive.") (emphasis added); *see also Klodzinski v. Astrue*, 274 F. App'x 72, 74 (2d Cir. 2008) ("Although the ALJ should have explicitly announced in his written opinion that he was rejecting Dr. Scrivani's opinion and explained the reasons for doing so, we are confident that the ALJ considered and rejected it for reasons that are appropriate under the regulations and evident from the record and the ALJ's findings."); *Halloran*, 362 F.3d at 32 (deducing—despite no express discussion of the regulatory factors—"that the ALJ considered the treating physician's opinion and explained the consistency of [the] opinion with the record as a whole") (internal quotations and citation omitted). Courts have thus found harmless error where they could deduce that the ALJ followed regulatory procedure in considering and discounting treating physician opinions in substance if not in form.

Alexander argues that "the ALJ never actually considered the merits" of the 2012 opinion, "giving it 'little weight' on the grounds that the signature did not appear to be that of the doctor," (Doc. 14 at 3), and the court agrees. Indeed, the ALJ's decision does not mention any content of the treating physician's opinion beyond the signature line: "A form in support of state General Assistance (Exhibit 14F) purportedly signed by Robert Schwartz, MD is given little weight. The signature appears different from multiple signatures within Exhibit 13F." (AR 30.)

(The decision proceeds to conclude that "Dr. Schwartz'[s] [treatment] notes reflect a normal mental status [and] normal physical findings . . . ." (*Id.*)) The ALJ's decision does not engage at all with the substance of the 2012 Schwartz opinion; therefore, the court cannot conclude that he "considered" it under the regulations.[1] *Cf. Zabala v. Astrue*, 595 F.3d 402, 407, 409-10 (2d Cir. 2010) (concluding that the ALJ "considered" a treating physician opinion where the ALJ "described the main findings of [it]" and noted two findings in particular); *Halloran*, 362 F.3d at 32 (deducing that the ALJ "considered" a treating physician opinion where "the ALJ noted that many findings in [the opinion] . . . accorded with the findings" in another physician's opinion); *Seekins v. Astrue*, No. 3:11CV00264(VLB)(TPS), 2012 WL 4471266, at *5 (D. Conn. Aug. 14, 2012) (concluding that the ALJ "considered" a treating physician opinion where the ALJ "explained that the significant limitations contained in [the] opinion were inconsistent with [the doctor's] treatment notes" and "cite[d] this lack of supporting medical signs and laboratory findings and inconsistencies with the record as a whole as his reasons for assigning limited weight to [the treating physician's] opinions").

Nor is the ALJ's doubt concerning the authenticity of the 2012 Schwartz opinion a good reason for giving it little weight. The implied charge that the claimant or someone acting on his behalf fabricated the record should have been given full consideration and either confirmed or rejected altogether. It was error to discount the opinion on this basis without making a final determination that the report was not the physician's opinion.

The analysis above also applies to the ALJ's treatment of the 2013 Schwartz opinion, which was left out entirely from his written decision. When an ALJ's decision completely ignores a treating physician opinion, remand is unnecessary only if "the excluded evidence [was] essentially duplicative of evidence considered by the ALJ." *Zabala*, 595 F.3d at 409. The 2013 Schwartz opinion was not "essentially duplicative" of his 2012 opinion, because it considers his

---

[1] The Commissioner cites a case noting that "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." (Doc. 13 at 25 (citing *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012)). This proposition, however, does not mandate a finding that the ALJ considered any evidence he failed to cite; rather, it merely allows a court to so find. In *Brault*, moreover, this proposition applied to excuse an ALJ from recording his consideration of the claimant's objection to the VE's testimony, a factor that—unlike the weight assigned to a treating physician's opinion—the regulations do not affirmatively require the ALJ to consider. 683 F.3d at 448.

elbow injury and the 2012 Schwartz opinion did not. Moreover, as concluded above, the ALJ did not sufficiently consider the 2012 Schwartz opinion to justify excusing the utter neglect of the 2013 Schwartz opinion in the ALJ's decision.

The court cannot be confident that Alexander "received the [treating physician] rule's procedural advantages," nor can it conclude that "the substance of the treating physician rule was not traversed." *Halloran*, 362 F.3d at 32. Remand is necessary for the ALJ to: make a determination regarding the authenticity of the 2012 Schwartz opinion; consider the substance of both of Dr. Schwartz's opinions; and explain, addressing the regulatory factors, the reasons for the weight he affords Dr. Schwartz's opinions.

### B.     The Severity Determination

Alexander argues that the ALJ should have found his fractured right elbow to be a "severe" injury at step two because it caused limitations in hand use. (Doc. 10 at 2-3.) A severe impairment is one that "limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). "A finding of 'not severe' should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (internal citations omitted); *see also* SSR 85-28.

The ALJ erred in his severity determination to the extent he did not consider Dr. Schwartz's 2013 opinion, weighted according to the relevant regulatory factors with a sufficient explanation. On remand the ALJ should take the opportunity to reconsider the severity of Alexander's elbow injury by considering the extent to which his fractured elbow limits his physical ability to do basic work activities, and the ALJ should take all treating physician opinions, weighted appropriately, into account.

### C.     The Twelve-Month Duration Requirement

Alexander also argues that the ALJ's determination that Alexander's elbow injury would not constitute an impairment for twelve months or more is not supported by substantial evidence. (Doc. 14 at 2.) An impairment, even if severe, must meet the twelve-month duration requirement in order for it to cause the claimant to be disabled. *See* 20 C.F.R. § 404.1509. The

9

claimant bears the burden of showing that his impairment "must have lasted or must be expected to last for a continuous period of at least twelve months." *Id.*

The ALJ's conclusion that Alexander's elbow injury did not meet the duration requirement is not supported by substantial evidence, because he gave no consideration to two treating physician opinions in forming the conclusion. One of those opinions arguably supports Alexander's claim that his elbow injury constitutes an impairment of at least twelve months' duration. On remand, the ALJ should take the opportunity to reconsider the duration of Alexander's elbow injury, after having appropriately considered all treating physician opinions, as discussed above.

Although it is unnecessary to the disposition of this appeal, the court addresses Alexander's argument that the ALJ was required to clearly state either:

> Within 12 months of onset, there was or is expected to be sufficient restoration of function so that there is or will be no significant limitation of the ability to perform basic work-related functions . . . or

> Within 12 months of onset, there was or is expected to be sufficient restoration of function so that in spite of significant remaining limitations the individual should be able to do past relevant work or otherwise engage in SGA, considering pertinent vocational factors.

SSR 82-52 ("Evaluation"); (Doc. 10 at 5.) The ruling directs the ALJ to clearly so state where disability denial is "on the basis of insufficient duration." A denial is on the basis of insufficient duration where, *inter alia*, the impairment "was or is of such severity that the claimant was or is unable to engage in any [substantial gainful activity]." SSR 82-52 ("Evaluation"). This requirement would only apply here if the ALJ concludes upon remand that the elbow injury rendered Alexander unable to perform any substantial gainful activity. *See Schiavone v. Astrue*, No. 3:10-cv-140 JVB, 2011 WL 4602151, at *12 (N.D. Ind. Sept. 29, 2011) ("Because the ALJ did not find that the back injury rendered Plaintiff unable to perform any substantial gainful activity, . . . the ALJ was not required to explicitly state that there was expected to be sufficient restoration of function within 12 months of the onset date . . . ."); *Manuella v. Astrue*, No. 08-1316, 2009 WL 1491451, at *11 (E.D. Pa. May 27, 2009) ("S.S.R. 82-52 envisions that a case decided on duration would involve a finding that disability is established at the onset date . . . .").

### D. The ALJ's Duty to Develop the Record

Because the disability hearing is non-adversarial, the ALJ has an affirmative duty to develop the record "for at least a twelve-month period if there was reason to believe that the information was necessary to reach a decision." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); *see also* 20 C.F.R. § 416.912(d)(2). The Commissioner is obligated to seek out additional evidence, however, only where there are "obvious gaps" in the record. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999). Alexander argues that the ALJ "failed in his duty to adequately develop the record to determine the severity and long term consequences of the [elbow] injury." (Doc. 10 at 4.)

The record before the ALJ included a detailed medical history from multiple treatment providers pertaining to multiple conditions over many years. Among these records are the progress notes from Alexander's visits to the Springfield Hospital Emergency Department, where he went when he fell and injured his elbow, and to Connecticut Valley Orthopaedics and Sports Medicine, where Dr. Muller treated his elbow injury on multiple occasions. (AR 920-62, 1162-68, 1169-74.) Dr. Muller's records include examination results; an opinion concerning the recovery timeline; recommendations for physical therapy; and prescriptions for, as well as a later denial of, narcotics that Alexander desired for pain alleviation. The ALJ had no duty to further develop the record of medical treatment for Alexander's elbow injury.

However, as noted above, the ALJ doubted the authenticity of the opinions attributed to Dr. Schwartz in the record—one of which bears on the severity and duration of the elbow injury. On remand, the ALJ should make a conclusive finding concerning the authenticity of Dr. Schwartz's opinions, and if this requires acquiring more information from Dr. Schwartz, the ALJ should do so.

### E. The ALJ's Use of the Medical Evidence

Alexander argues that the ALJ determined the limitations caused by his elbow injury "without supporting medical evidence." (Doc. 10 at 4.) Alexander is correct to point out that an ALJ is not qualified to analyze raw medical data, and must interpret the medical evidence through the expert opinion of a physician. *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("In the absence of a medical opinion to support the ALJ's finding . . . the ALJ cannot

11

arbitrarily substitute his own judgment for competent medical opinion.") (internal quotations and modifications omitted). The court concludes that the ALJ did not improperly analyze raw medical data in his consideration of Dr. Muller's treatment notes.

Dr. Muller's treatment notes contain his own analysis of the medical data, as well as his treatment recommendation and prognosis concerning the recovery timeline. The ALJ thus relied on Dr. Muller's prognosis as recorded in his treatment notes and not on raw medical data alone. *Cf. Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (remanding where "the ALJ . . . interpret[ed] raw medical data in functional terms and no medical opinion supported the determination"); *Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) (remanding to the Commissioner where "the ALJ simply evaluated [medical] tests anew and—without citing any supporting expert testimony—reached conclusions that differed from those of [claimant's treating physician]"). The court is aware that Dr. Muller's analysis comes in the form of treatment notes and not an agency opinion form. The ALJ was nonetheless entitled to rely on Dr. Muller's statements as recorded in his treatment notes as medical opinion. *See* 20 C.F.R. § 416.927(b) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis . . . .").

The court need not consider whether the ALJ by virtue of ignoring Dr. Schwartz's opinion "set his own expertise against that of [Dr. Schwartz]," *Balsamo*, 142 F.3d at 81, because the ALJ is instructed to give appropriate consideration to Dr. Schwartz's opinions on remand.

## CONCLUSION

For the reasons stated above, Alexander's motion to reverse the Commissioner's decision is GRANTED, and the Commissioner's motion to affirm is DENIED. The court REMANDS the matter for further proceedings and a new decision consistent with this opinion.

Dated at Rutland, in the District of Vermont, this 29th day of December, 2014.

_____
Geoffrey W. Crawford, Judge
United States District Court